UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

CHEETAH DIGITAL, INC.,

                                   Plaintiff,                    Civil Action No:. 21-cv-_____

            – against –                                           **COMPLAINT**

SMOOTHIE KING FRANCHISES, INC.,

                                   Defendant.

Plaintiff CHEETAH DIGITAL, INC., by its attorneys, YANKWITT LLP, for its

Complaint against Defendant SMOOTHIE KING FRANCHISES, INC., alleges as follows:

## <u>NATURE OF THE ACTION</u>

1.      This is an action under New York law for breach of contract, by which plaintiff

Cheetah Digital, Inc. ("CDI") seeks monetary damages from defendant Smoothie King

Franchises, Inc. ("SKFI").

2.      On or about August 13, 2019, SKFI entered into a Master Services Agreement

("MSA") with CDI, in accordance with which CDI would provide SKFI with digital marketing

technology and services.  On March 4, 2020, and pursuant to the MSA, SKFI executed an order

form that specifically engaged CDI to implement a customer loyalty program for the company

(the "Loyalty Order Form").  The term of the Loyalty Order Form extended for 36 months, with

a total cost to SKFI of approximately $2.65 million.

3.      Annexed hereto as Exhibits A and B, respectively, are true and correct copies of the

MSA and the Loyalty Order Form, which are incorporated into this Complaint by reference.

4.      By letter dated March 27, 2020, SKFI purported to terminate the Loyalty Order Form (the "Termination Letter").  A true and correct copy of the Termination Letter is annexed here to as Exhibit C, which is incorporated into this Complaint by reference.

5.      Citing the "Coronavirus pandemic and the resulting economic crisis," the Termination Letter claimed that SKFI was "exercising its right to terminate the Loyalty Order Form" in accordance with the MSA's *force majeure* provision ("FM Provision").

6.      CDI did not agree to terminate the Loyalty Order Form.

7.      Almost one year later, in early 2021, SFKI stated publicly that "[w]hile the COVID-19 pandemic brought changes and difficulties, *it also brought tremendous opportunity, especially for smoothie franchises*" (emphasis added).  SKFI boasted that, "[w]ith a *record-breaking 263 locations opened in 2020*, the Smoothie King franchise is labeled as a key competitor in the smoothie market" (emphasis added). *See* https://www.smoothiekingfranchise.com/blog/2020/february/how-big-is-the-smoothie-market-in-2020-/

8.      According to contemporaneous trade-press reports, "Smoothie King, the world's largest smoothie brand," successfully "*grew comp sales for the ninth consecutive year*" in its U.S. stores in 2020, "and closed out the second half of 2020 *posting an unprecedented 12.2% sales growth* year-over-year" (emphasis added).   These reports highlighted that "Smoothie King hit *record-setting* new store annualized average sales of $627,922 for 2020 openings" (emphasis added).  *See* https://www.fastcasual.com/news/smoothie-king-posts-record-growth-in-2020-despite-pandemic/

9.      Only two weeks after it signed the Loyalty Order Form, and despite the bumper year for smoothie sales that followed, SKFI clearly and unambiguously repudiated the MSA.

10.     Having done so, SKFI is now liable in damages to CDI.

## THE PARTIES

11.     CDI is a corporation organized under the laws of Delaware, with its principal place of business located at 72 West Adams Street, Suite 800, Chicago, IL 60603.  CDI provides companies across numerous business sectors with digital marketing technology and services.

12.     SKFI is a corporation organized under the laws of Louisiana, with its principal place of business located 9797 Rombauer Road, Coppell, TX 75019.  SKFI is a global franchiser of pureed fruit and vegetable beverage products, with over 1000 store locations across the United States, and more than 1300 locations worldwide.

## JURISDICTION AND VENUE

13.   This Court has subject matter jurisdiction to adjudicate this action pursuant to 28 U.S.C. § 1332(a)(1) because the parties are residents of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.   This Court has personal jurisdiction over SKFI pursuant to N.Y. C.P.L.R. § 302 because SKFI transacted business in New York in connection with the Loyalty Order Form. This Court also has jurisdiction over SKFI pursuant to the forum selection clause contained in ¶ 12.1 of the MSA.

15.   Venue in this Court is proper pursuant to the forum selection clause contained in ¶ 12.1 of the MSA.

## RELEVANT CONTRACT PROVISIONS

16.   The MSA provides that, once fully executed, an Order Form "becomes incorporated into and part of" the MSA.  *See* Exh. A, ¶ 1.  The Loyalty Order Form was fully executed by CDI and SKFI on March 4, 2020.  *See* Exh. B at 5.

17.   According to the MSA, "[u]pon execution by [SKFI] and [CDI], each Order Form . . . is non-cancellable and non-refundable, except as provided in this Agreement, and the Term as set forth in the Order Form for [CDI] Services is a continuous and non-divisible commitment for the full duration of the Term, except as otherwise agreed upon in this Agreement."  Exh. A, ¶ 5.1.

18.   If SFKI terminates the MSA for any other reason other than CDI's material breach, the agreement requires SKFI to pay CDI "an early termination fee equal to the amounts which would have been due to [CDI] under the [Loyalty Order Form] had such Order Form not been terminated early."  Exh. A, ¶ 8.3.  That sum is $2,645,723.  *See* Exh. B at 3.

19.   In certain situations, and under specified conditions, the MSA excuses specific aspects of contract performance by either SKFI or CDI.  To that end, the agreement's FM Provision states:

> In the event that either Party is prevented from performing, or is unable to perform, any of the obligations under this Agreement due to any cause beyond the reasonable control of the Party invoking this provision (including, without limitation, for causes due to war, fire, earthquake, flood hurricane, riots, acts of God, telecommunications outage not caused by the obligated party, or other similar causes) ("**FORCE MAJEURE EVENT**"), the affected Party's performance *will be excused and the time for performance will be extended for the period of delay or inability to perform due to such occurrence*; provided that the affected Party: (a) provides the other Party with prompt notice of the nature and expected duration of the Force Majeure Event; (b) uses commercially reasonable efforts to address and mitigate the cause and effect of such Force Majeure Event; (c) provides periodic notice of relevant developments; and (d) provides prompt notice of the end of such Force Majeure Event.  *Obligations to pay are excused only to the extent the payments are entirely prevented by the Force Majeure Event.*

Exh. A, ¶ 13.4 (emphasis added).

## FIRST CAUSE OF ACTION
## (<u>BREACH OF CONTRACT</u>)

20.   CDI repeats and realleges each and every paragraph contained in the Complaint as if fully set forth herein.

21.   In or about the second week of March 2020, SKFI communicated to CDI that the COVID-19 pandemic had prompted SKFI to reassess its business plan for 2020.  As part of SKFI's new strategy, it requested that CDI agree to delay performance of the Loyalty Order Form for nine to twelve months.

22.   In response, CDI advised SKFI that it would consider adjusting SKFI's obligations under the Loyalty Order Form if SKFI would commit in writing to begin performance once SKFI's business had returned to a healthy state.

23.   SKFI refused to put any agreement in writing and, instead, issued the Termination Letter.

24.    Rather than seek in good faith to restructure the Loyalty Order Form's performance and payment schedules, SKFI instead repudiated the agreement in clear and unambiguous terms. The Termination Letter flatly states that "SKFI is unable to make any payments to [CDI] under the Loyalty Order Form" and thus "hereby terminates the Loyalty Order Form."  Exh. C.

25.   Within days of receiving the Termination Letter, CDI's general counsel informed SFKI's general counsel by telephone that CDI would not terminate the Loyalty Order Form.

26.   Having unilaterally terminated the agreement, however, SKFI became obligated to pay CDI "all amounts which would have been due to [CDI] under the [Loyalty Order Form] had such order Form not been terminated early."  Exh. A, ¶ 8.3.

27.   Contrary to the conclusion set forth in the Termination Letter, the FM Provision did not release SKFI from that payment obligation.  Although the FM Provision may permit a party

to *delay* contract performance, it nowhere authorizes a party, under any circumstances, to cancel the entire contract preemptively.

28.   Moreover, SKFI never made any commercially reasonable efforts to address and mitigate the impact of the COVID-19 pandemic on its contractual obligations, as required by the FM Provision.

29.   In any event, upon information and belief, SKFI was not "entirely prevented" from making its contract payments, as is required for the FM Provision to apply.  Despite the COVID-19 pandemic, SKFI reported tremendous business and economic growth in 2020.  It therefore ultimately would have been able to make those payments.

30.   By reneging entirely on its payment obligations, however, SKFI materially breached the MSA and Loyalty Order Form.

31.   As a direct result of SKFI's breach, CDI has sustained damages in an amount not less than $2,645,723.

## SECOND CAUSE OF ACTION
### (ATTORNEYS' FEES)

32.   CDI repeats and realleges each and every paragraph contained in the Complaint as if fully set forth herein.

33.   The MSA provides that SKFI "will be responsible for any fees (including attorneys' fees), costs, and expenses incurred by [CDI] to collect undisputed amounts that are not paid when due."  Exh. A., ¶ 5.1.

34.   Because SKFI repudiated the Loyalty Order Form, CDI commenced this action to recover the unpaid amounts due and owing under the parties' agreement.

35.   As a direct result of having to sue SKFI for payment, CDI is incurring substantial legal fees, costs, and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, CDI demands judgment as follows:

A.  For damages in an amount not less than $2,645,723 to be determined at trial;

B.  An award of reasonable attorneys' fees, costs, and disbursements in an amount to

be determined at trial;

C.  Pre- and post-judgment interest in an amount to be determined at trial; and

D.  Such other and further relief as this Court may deem just and proper.

Dated:    July 21, 2021
White Plains, New York

YANKWITT LLP

By:

Daniel S. Alter
Russell M. Yankwitt
140 Grand Street, Suite 705
White Plains, New York 10601
Tel: (914) 686-1500
Fax: (914) 487-5000
daniel@yankwitt.com
russell@yankwitt.com
*Attorneys for Plaintiff Cheetah Digital, Inc.*